UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| KIMBERLY ELLEN RAMIREZ, | Case No. EDCV 16-00948-KES |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kimberly Ellen Ramirez ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff applied for DIB on October 18, 2012, alleging the onset of disability on January 20, 2012. Administrative Record ("AR") 174-180. Plaintiff applied for SSI on January 7, 2013, alleging disability commencing December 29, 2011. AR 182-191. An ALJ conducted a hearing on October 28, 2014, at which Plaintiff, who

was represented by an attorney, appeared and testified. AR 38-65.

On March 6, 2015, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 22-37. The ALJ found that Plaintiff had the following severe impairments: right breast infiltrating ductal carcinoma, status post lumpectomy. AR 27. Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could return to her past relevant work as a hospital insurance clerk. AR 33. Therefore, the ALJ concluded that Plaintiff is not disabled. Id.

## II.
## ISSUES PRESENTED

Issue No. 1: Whether the ALJ adequately considered Plaintiff's pain and symptom testimony;

Issue No. 2: Whether the ALJ properly evaluated the opinions of state agency consulting examiners B. Smith, M.D., and Eugene Campbell, Ph.D., both of whom opined that Plaintiff's ability to understand and remember detailed instructions was moderately limited.

Joint Stipulation ("JS") at 4.

## III.
## DISCUSSION

**A.  The ALJ Properly Evaluated Plaintiff's Testimony.**

**1.  Applicable Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingerfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim, 763 F.3d at 1163 & n.9. The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.[1]

---

[1] The Social Security Administration ("SSA") recently published SSR 16-3p, (Cont.)

**2. Plaintiff's Testimony.**

At the October 28, 2014 hearing, Plaintiff testified that she lives in a house with two adult children and her grandchildren. AR 45-46. She testified that she had surgery for breast cancer in March 2013. AR 51. Plaintiff's primary doctor has prescribed Prozac and Celexa for Plaintiff's depression and anxiety. AR 56-57. She also takes Femora, a drug used to treat breast cancer, and Motrin (800mg), for migraines she experiences "maybe a couple of times a week." AR 57-58. Plaintiff testified that she has persistent pain in her fingers, wrists, legs, knees, and feet, which she began experiencing after chemotherapy treatment. AR 52. She also testified that her arms regularly go numb. AR 50. She often lays down and props herself up to feel better. AR 52. Her medications cause hot flashes and night sweats that wake her up three to four times a night. AR 53.

Plaintiff testified that her daily routine generally consists of dressing herself, cleaning her room and doing her own laundry, and occasionally cooking simple meals. AR 54-55. She waters plants outside, and helps watch her grandchildren while one of her daughters is at school. AR 55. She is able to leave the house for walks occasionally, but often gets tired and experiences pain. AR 56.

Plaintiff testified that during a work day, she estimates she could sit for a couple of hours, but she could not stand for very long because she experiences pain and begins to feel tired after prolonged standing. AR 54.

---

2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, approximately one year after the ALJ issued his decision on March 6, 2015, and therefore is not applicable to the ALJ's decision in this case. Id.

### 3. The ALJ's Treatment of Plaintiff's Credibility.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." AR 30.

The ALJ found that the medical record did not support Plaintiff's allegations of disabling pain. He noted that Plaintiff's treatment for breast cancer was "temporary and successful," and that the treatment "did not cause significant side effects or limitations." AR 31. The ALJ summarized the following medical evidence to support his findings:

- July 2011: Plaintiff was diagnosed with breast cancer. AR 30-31, citing AR 263, 374.
- February 2012: Plaintiff underwent a right axillary sentinel lymph node biopsy, a right partial mastectomy, and a right axillary lymph node dissection. AR 31, citing AR 378-79.
- June 2012: Plaintiff completed four cycles of chemotherapy. Id., citing AR 263, 265.
- October 2012: Plaintiff completed postoperative and postchemotherapy radiation therapy, after a brief treatment break due to a skin reaction and breast edema. Id., citing AR 263-64
- December 2012: Plaintiff reported "a significant reduction in the erythema and swelling of her right breast, but she complained of right axillary and upper arm pain unchanged since the surgery, and parathesias, especially in her hands, which was controlled by Vicodin." Id., citing AR 260. On physical examination, all systems were normal, except for occasional nausea, which was controlled by medication with good results. Id., citing AR 261.
- January 2013: Plaintiff complained of breast tenderness. Id., citing AR

400.
- February 2013: An MRI of Plaintiff's breasts revealed benign findings. Id., citing AR 364-65.
- March 2013: Plaintiff's oncologist noted that Plaintiff responded well to radiation or other therapy, had mild redness in the breast due to radiation therapy, and would be on Femara for five years with good prognosis. Id., citing AR 359-60.
- May 2013: Plaintiff continued to report right breast pain, intermittent numbness and tingling, nausea/gastric reflux, knee pain when rising from a seated position; and a cough for three months. Id., citing AR 404-05. A review of systems and physical exam, however, were normal except for tenderness of the right breast. Id.
- June 2013: Plaintiff reported hot flashes since starting Femara, and that medication was helping her gastric reflux. Again, a review of systems and physical exam were normal, except for mild redness and tenderness in the right breast. Id., citing AR 402-03.
- July 2013: Plaintiff complained of continued hot flashes and was prescribed a catapres patch. She also complained of joint and right upper quadrant pain. Her review of systems and physical exam were normal except for a history of depression. AR 32, citing AR 350-52. A mammogram that month was also benign. Id., citing AR 460.

Upon review of this evidence, the ALJ concluded that following surgery, Plaintiff "had a good response to chemotherapy and radiation, there [was] no evidence of malignancy following the therapies, and she had a good prognosis with Femara." AR 32. Further, the ALJ observed that Plaintiff had various physical complaints at her appointments, but "review of systems [was] generally normal, and the physical examinations [were] generally benign except for some mild findings in the right breast." Id. Meanwhile, "[m]edications appear effective in controlling

[Plaintiff's] pain and gastric symptoms." Id.

The ALJ also noted that there was little evidence of tenderness or range of motion deficits that would prevent Plaintiff from performing her daily activities. AR 32. The ALJ further determined that examinations of Plaintiff did not show significant limitations to overall functionality and demonstrated her complaints of pain were temporary. Id. While Plaintiff described performing daily activities slower, she still could take care of her personal hygiene, do simple cooking, do chores such as laundry, cleaning, and watering her garden. Id. Plaintiff also testified that she could still drive and run errands. Id.

The ALJ also noted that Plaintiff did not allege difficulty sitting or standing to her physicians during or following her treatment, nor did she allege overall body pain or frequent migraine headaches. Id. Plaintiff also listed light exercise as a form of physical activity (id., citing AR 351) and in many of her examinations denied any complaints. Id. Thus, the ALJ found "there is insufficient objective medical evidence to support the claimant's complaints." Id., citing 20 C.F.R. §§ 404.1529, 416-929.

### 4. Analysis.

First, Plaintiff argues that the ALJ erred in finding that the objective medical evidence does not support Plaintiff's testimony regarding the severity of her symptoms. JS at 7. The Court disagrees.

The ALJ's determination that the objective evidence is inconsistent with Plaintiff's testimony regarding the severity and extent of her limitations is supported by substantial evidence. As noted above, the ALJ thoroughly discussed both Plaintiff's testimony and the medical evidence. He referenced several pieces of medical evidence revealing relatively benign findings of breast tenderness, with all other systems and physical examinations normal. The ALJ cited various examinations and noted that while Plaintiff consistently complained of right breast and arm pain, hot flashes, and nausea, the record did not support Plaintiff's

7

testimony that she suffered from overall body pain and frequent migraine headaches.

Moreover, the ALJ did not rely solely on the lack of supporting medical evidence. As discussed below, the ALJ gave two other clear and convincing reasons to discount Plaintiff's credibility concerning the severity and limiting effects of her pain. The ALJ was permitted to consider the lack of supporting medical evidence as a factor confirming his other reasons. See Burch, 400 F.3d at 681; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); Social Security Ruling 96-7p (same).

Second, Plaintiff contends that the ALJ improperly considered her ability to perform daily activities in determining her credibility. JS at 8-9. The Court disagrees. There is substantial evidence to support the ALJ's determination that Plaintiff's daily activities are inconsistent with her testimony regarding the severity of her symptoms. Plaintiff testified that she was able to attend to her personal hygiene, do household chores, cook simple meals, and help watch her grandchildren. AR 32, citing AR 54-55. She previously acknowledged that she is able to drive, shop, and run errands. Id., citing AR 314. She also has indicated that she engages in light exercise. Id., citing AR 351. The extent and nature of Plaintiff's daily activities was an acceptable factor for the ALJ to consider in assessing her credibility. 20 C.F.R. § 404.1529. If "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989).

Third, Plaintiff argues that the improperly considered the statements Plaintiff

made regarding the reason she stopped working in 2008. JS at 9. Plaintiff states that she "was let go in 2008, but alleged disability in 2012, so ALJ's reasoning is not logical." Id. During an examination with consultative examiner Douglas W. Larson, Ph.D in April 2013, Plaintiff said that she stopped working because of her medical problems. AR 313. However, at the hearing Plaintiff testified that she stopped working because she was laid off, and had sought work afterward. AR 47-49.

The ALJ's consideration of Plaintiff's inconsistent statements about the reasons she left her last job is supported by substantial evidence. By citing these inconsistent statements, the ALJ provided a clear and convincing reason for discounting Plaintiff's credibility. Had this been the only reason given, it would still have been sufficient to support an adverse credibility determination. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (An "ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony."); see also Fair, 885 F.2d at 603 ("If a claimant … is found to have been less than candid in other aspects of his testimony, that may properly be taken into account in determining whether his claim of disabling pain should be believed.")

Finally, Plaintiff argues that "it must be noted that [Plaintiff] grids out as disabled at age 55 with even a 'light' and unskilled residual functional capacity." JS at 8, citing 20 C.F.R. P. 404, Subpt. P App. 2 §§ 202.04. However, the ALJ found Plaintiff limited to medium work. AR 30. Pursuant to the Medical-Vocational Guidelines (the grids), a person Plaintiff's age (55 years old at the decision date), limited to medium work, is not disabled unless she has no previous work experience and less than a high school education. Id. at §§ 203.10-203.17. Neither of those exceptions describe Plaintiff. See AR 314 (plaintiff graduated from high school and attended two years of college); AR 59 (plaintiff previously worked as a hospital insurance clerk). It appears that Plaintiff is arguing that she should have been assessed with a more restrictive RFC based on her pain and symptom testimony, which the ALJ improperly discredited. As discussed above, the Court

finds that the ALJ did not err in discrediting Plaintiff's testimony, and therefore assigned a proper RFC of medium work. Therefore, the grids do not direct a different result.

**B.     The ALJ Properly Evaluated Dr. Smith's and Dr. Campbell's Opinions.**

**1. Applicable Law.**

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither, but reviewed the plaintiff's medical records. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. Id. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

The weight given a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 416.927(c)(3)-(6). Medical opinions that are inadequately explained or lack supporting clinical or laboratory findings are entitled to less weight. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation"); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

In determining a claimant's RFC, the ALJ should consider those limitations for which there is support in the record, but need not consider properly rejected evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted.").

The ALJ must "explain the weight given to the opinions" of the state agency physicians and psychologists. 20 C.F.R. §§ 404.1547(e)(2)(ii); 416.927(e)(2)(ii). State agency medical and psychological consultants are highly qualified experts, and ALJs "must consider findings of State agency medical and psychological consultants … as opinion evidence." That treatment, consideration, and need for explanation includes assessment of RFC. Social Security Ruling 96-6p.

**2. Summary of Drs. Smith and Campbell's Opinions.**

Drs. Smith and Campbell, non-examining state agency consultants, reviewed Plaintiff's medical records and provided their psychiatric opinions concerning Plaintiff's disability. AR 66-120.

On April 23, 2013, Dr. Smith reviewed Plaintiff's medical records and provided his medical opinions regarding Plaintiff's functional mental impairments. In assessing Plantiff's medically determinable impairments, Dr. Smith opined that Plaintiff has moderate difficulties in maintaining concentration, persistence, and pace. AR 70. In his mental RFC assessment, Dr. Smith opined that Plaintiff is moderately limited in her ability to (1) understand, remember, and carry out detailed instructions and (2) maintain attention and concentration for extended periods. AR 73-74. Dr. Smith clarified that Plaintiff's moderate limitations would not interfere with her ability to understand and remember simple instructions, perform simple tasks, and maintain a regular schedule. Id. Based on his mental RFC

assessment, Dr. Smith further opined that Plaintiff could not return to her past relevant work as a billing clerk[2] because she was limited to unskilled work. AR 75. He diagnosed Plaintiff with "organic mental disorders" and "mood disorders." AR 70. Dr. Campbell reviewed the file on October 2, 2013, and affirmed Dr. Smith's opinion. AR 101.

### 3. The ALJ's Treatment of Drs. Smith and Campbell's Opinions.

The ALJ gave great weight to Douglas W. Larson, Ph.D., a state consulting psychologist who examined Plaintiff on April 9, 2013. AR 29. At her consultative examination, Plaintiff told Dr. Larson that she was not currently receiving mental health services or taking antidepressant medications, but that she had taken Prozac in the past with partial relief. AR 314. She reported that she could perform such activities as dressing, bathing, performing chores, yard work, cooking, shopping, running errands, going out with her family, and driving, though slower than before due to health issues. AR 314. Dr. Larson described Plaintiff as pleasant and cooperative, generally coherent and organized with normal speech rate and tone with mildly depressed and anxious mood and affect, and fair insight and judgment. AR 315. On testing, Dr. Larson found that her IQ results were moderately scattered from borderline to low average due to depression and cognitive problems. AR 316. He diagnosed her with a cognitive disorder and a mood disorder. AR 317.

Dr. Larson concluded that Plaintiff had no impairments with respect to her ability to understand, remember, and complete simple commands, and was only

---

[2] The billing clerk position discussed by Dr. Smith has a specific vocational preparation ("SVP") level of 4, which he identified as semi-skilled. (See DOT 214.382-014, AR 75.) In contrast, the VE classified Plaintiff's past relevant work as a hospital insurance clerk (DOT 214.362-022). That position has a SVP of 5, which is considered skilled. See AR 59. This distinction is irrelevant, as the ALJ found that Plaintiff could perform the skilled position that the VE identified, which would encompass similar semi-skilled work.

mildly limited in all other aspects of mental functions, including the ability to understand, remember, and complete complex commands and maintain persistence and pace in a normal workplace setting. AR 317. The ALJ gave Dr. Larson's opinion great weight "because he supported it with clinical findings," and the opinion was consistent with Plaintiff's ability to perform extensive daily activities, the absence of treatment by a mental health specialist, and the absence of references in the treatment notes to mental health symptoms such as disturbed mood or behavior limitations. AR 29.

The ALJ considered, but gave little weight to Drs. Smith and Campbell's opinions that Plaintiff is moderately (as opposed to mildly) limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. The ALJ found that their opinion was "inconsistent with Dr. Larson's clinical findings, the absence of mental health treatment and lack of regular psychiatric complaints, and [Plaintiff's] description of her daily activities." AR 29.

**4. Analysis.**

First, Plaintiff argues that the opinions of Drs. Smith and Campbell are not inconsistent with Dr. Larson's clinical findings because they reviewed Dr. Larson's opinion prior to rendering their own, they had access to other medical evidence when rendering their opinions, and that Dr. Larson's exams revealed results in the borderline to low range of cognitive functioning. JS at 16, citing AR 317.

The ALJ is "the final arbiter with respect to resolving ambiguities in the medical evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). "If the record would support more than one rational interpretation, [a reviewing court] defer[s] to the ALJ's decision." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). See also Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (questions of credibility and resolution of conflicts in the testimony are functions solely for the agency).

The ALJ's determination that Dr. Larson's assessment of Plaintiff's ability to understand and remember complex commands (i.e., mildly impaired) is inconsistent with Drs. Smith and Campbell's assessment of Plaintiff's ability to understand and remember detailed instructions (i.e., moderately impaired) is a rational interpretation of the medical evidence. The ALJ properly credited Dr. Larson's examining opinion over the opinions of both non-examining psychologists. See Lester, 81 F.3d at 830.

Plaintiff's argument that Drs. Smith and Campbell "had access to other medical evidence when rendering their opinions" is also unavailing. The only record suggesting functional mental impairment was Dr. Larson's report, which Drs. Smith and Campbell reviewed and gave "great weight." AR 70-72, 110-113. The ALJ reasonably determined that Drs. Smith and Campbell relied primarily on Dr. Larson's report to assess Plaintiff's mental impairments.

Second, Plaintiff argues that her ability to engage in regular daily activities "does not illustrate the ability to perform complex work on a sustained basis." JS at 16. "Inconsistency between a physician's opinion and a claimant's daily activities suffices as a specific and legitimate reason for discounting the physician's opinion if supported by substantial evidence from the record as a whole." Lindquist v. Colvin, 588 Fed. App'x 544, 546 (9th Cir. 2014) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-02 (9th Cir. 1999)). The regular performance of certain daily activities can demonstrate inconsistences with a Plaintiff's description of her mental abilities as well as her physical abilities. Plaintiff's reports that she is able to drive (AR 47, 83, 314), provide child care to her grandchildren (AR 55), and manage her personal finances (AR 315) evidence some ability to perform tasks requiring more cognitive skills than "simple" tasks. The ALJ properly discounted Drs. Smith and Campbell's opinions as inconsistent with the range of daily activities Plaintiff reported that she could perform.

Moreover, at step four in the sequential analysis, the claimant retains the

1  burden of proving he or she is unable to perform past relevant work. <u>Drouin v.</u>
2  <u>Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992). Plaintiff ultimately failed to provide
3  the ALJ with any medical opinion that she cannot do skilled work, which is the skill
4  level typically required to work as a hospital insurance clerk per the Dictionary of
5  Occupational Titles ("DOT") and the VE's testimony. (DOT 214.362-022; AR 59
6  [VE testimony indicating that the position has a SVP level of 5, which is considered
7  skilled].) The ALJ did not err in crediting the medical opinions of Dr. Larson rather
8  than those of Drs. Smith and Campbell when determining that Plaintiff's functional
9  mental impairments did not preclude skilled work.

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: <u>February 23, 2017</u>

_____
KAREN E. SCOTT
United States Magistrate Judge